**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FREEDOM LIVING ST. LOUIS, LLC, D/B/A FREEDOM LIVING, | ) ) ) | |
| | ) | Case No. |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| CITY OF ST. LOUIS, by and through THE CITY OF ST. LOUIS COMMUNITY DEVELOPMENT ADMINISTRATION, | ) ) ) ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff Freedom Living St. Louis, LLC, d/b/a Freedom Living ("Plaintiff"), by and through the law firm of Spooner Law, LLC, and for Plaintiff's Complaint against Defendant City of St. Louis by and through the City of St. Louis Community Development Administration ("Defendant") for denial of Plaintiff's substantive and procedural due process rights states to the Court as follows:

## Introduction

1.      On September 13, 2024, Plaintiff's application to develop low income housing in the City of St. Louis known as the Freedom Living Senior and Veteran Apartments (the "Project") was selected by Defendant for grant funding under the HOME Investment Partnerships American Rescue Plan Program, a/k/a HOME-ARP (the "Program"). The Program is established and administered by the U.S. Department of Housing and Urban Development ("HUD"). The Program provides grant funds through HUD to eligible state and local governments to assist in the expansion and supply of affordable low income housing.

1

2.      Defendant administers Program activities eligible to be funded with HUD grants through the St. Louis Community Development Administration ("CDA").[1] Defendant, by and through the CDA, agreed to administer the Program in compliance with applicable HUD rules and regulations. Approximately five (5) months after Plaintiff was notified that it was a Program participant Defendant unilaterally terminated Plaintiff's Program participation based on Plaintiff's purported violation of HUD regulations. As this Complaint demonstrates, Defendant's decision to terminate Plaintiff's grant was unfounded and not only misapplied Program rules and regulations, the CDA ignored HUD mandates by not providing Plaintiff a review of the termination decision under HUD's regulatory violation review process, the CDA did not consider Plaintiff's regulatory exemptions, the CDA failed to include HUD Program Office participation, and the CDA did not allow Plaintiff an opportunity to explain its activities and to provide evidence of good cause, unintentional noncompliance, and/or error, prior to Defendant's decision to terminate Plaintiff's Program participation.

### Parties, Jurisdiction and Venue

3.      Plaintiff was/is a limited liability company in good standing registered with the State of Missouri and is doing business in the City of St. Louis, State of Missouri. Plaintiff was a Program participant who held an interest in certain real property located in the City of St. Louis known and numbered as 4405-4411 North Newstead Ave., St. Louis, Missouri ("Property").

4.      Defendant is a geopolitical entity and charter city in accordance with RSMo § 46.145 and RSMo § 82.010 who at all times relevant herein acted by and through its agents, employees, and governmental units including the CDA which is an entity created by City Ordinance 56708 (1974) and City Ordinance 64688 (1999) as a part of Defendant's government.[2]

---

[1] The term CDA is synonymous with and is incorporated in the term Defendant.

[2] Ordinance 64688 changed the name to Community Development Administration.

5.     Non-Party HUD is the federal agency responsible for national policy and programs associated with America's housing needs.

6.     Plaintiff brings this action pursuant to the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution.

7.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

8.     Venue is proper before this Court under 28 U.S.C. § 1391 because the relevant events occurred within the City of St. Louis, Missouri, which is within the Eastern Division of this Court.

9.     At all relevant times, Defendant acted under color of state law. Particularly, at all relevant times Defendant acted under the color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri.

## Background

### *Defendant's Participation in the HUD Program*

10.     HUD provides funds to Defendant to strengthen public-private partnerships and to expand the supply of decent, safe, sanitary, and affordable low income housing through various programs including providing grant funds to Defendant for Program participants.

11.     The CDA performs various duties and functions on behalf of Defendant in connection with HUD fund grants for development and activities which include applying for, receiving and administering federal HUD grant funds for Program activities eligible to be funded by HUD which Defendant agrees to administer through the CDA in compliance with all applicable HUD rules and regulations.

12.     Defendant was/is bound by its ordinances, including City Ordinance 64688, which states the CDA will "comply with all lawful and applicable rules, regulations and reporting requirements imposed by HUD in connection with its grants of funds".

13.    In 2024 the CDA issued a Notice of Funding Availability ("NOFA") announcing the availability of up to $9,668,557 in Program grant funds for the production and preservation of permanent supportive housing with grant funding available to participants for low income housing development and supportive services.

14.    The NOFA stated the availability of grant funding is extremely limited and the application process is highly competitive and that all applications received are initially evaluated for eligibility and completeness and those that meet the criteria are advanced to the evaluation and rating stage where CDA staff determine who is selected to receive Program funds subject to HUD rules, regulations and approval.

15.    Plaintiff participated in the NOFA and submitted an application for the Project to develop and provide affordable low income senior and veteran housing.

16.    As part of the application process Plaintiff obtained an interest in the Property which is a four (4) story 151,000 square foot building located in the northern part of the City of St. Louis that was previously owned by the State of Missouri and known as the Prince Hall Family Support Center.

***Plaintiff's Participation in the Program***

17.    On September 13, 2024, Plaintiff was notified by the CDA that the Project was selected for a $2,000,000 funding recommendation and reservation as evidenced by the CDA's September 13, 2024 letter, a copy of which is attached hereto as **Exhibit 1** and incorporated herein by reference (the "9/13/2024 CDA Award Letter").

18.    Pursuant to the 9/13/2024 CDA Award Letter:

    i.    "this recommendation is a reservation of funding contingent upon full compliance with all local, state and federal laws associated with the use of these funds;

            ...

    ii.    [t]his funding reservation will expire on December 31st, 2025 unless [Plaintiff] execute and record a written agreement with Defendant concerning the Project or obtain an extension approved by the CDA;

...

    iii.    [i]f neither of these conditions is satisfied, the funds reserved in this recommendation will be reallocated and [Plaintiff] is invited to reapply in a future NOFA round."

19.    Following the 9/13/2024 CDA Award Letter Plaintiff inquired to the CDA if funds could be released to secure the Property due to break-ins, vandalism and trespassers.[3]

20.    On November 11, 2025, the CDA advised Plaintiff that:

> "The next Board meeting will be in December, so we know you will not be able to receive funding before 2025 at the earliest. Keep in mind these funds will not be issued as a one-time payment. ***They will reimburse you for funds spent. So keep your receipts and invoices of all expenditures. When you receive your Notice to Proceed, then you will be able to submit your expenditures for payment.***" (emphasis added)

A copy of the CDA's 11/11/2025 communication is attached hereto as **<u>Exhibit 2</u>** and incorporated herein by reference.

21.    Following the CDA's 11/11/2025 communication, Plaintiff obtained a Phase I environmental review to determine if there were any threshold environmental issues.

22.    During the course of the environmental review Plaintiff acquired a better understanding of the nature and significance of the vandalism and trespassers, which included theft and trespassers using debris inside the Property to build indoor fires.

***Plaintiff's January 2025 Activities***

23.    In January 2025, after learning there were no threshold environmental issues affecting the Project, Plaintiff attempted to better control the Property because of the threats to public safety and to prevent physical deterioration being caused by the vandals and trespassers by performing activities to secure the Property such as boarding up windows, cleaning up debris, and removing ceiling tiles that were being used to create the indoor fires.[4]

---

[3] From 9/1 to 11/6 the police were called to the Property at least fifteen (15) times.

[4] Plaintiff placed a dumpster on the Property for the removal of debris.

24.     The activities of Plaintiff in January 2025 were designed to protect the public and better control the Property and were in the nature of maintenance, debris clean up and security which did not alter or effect environmental conditions and which did not include any demolition, rehabilitation, repair, new construction, ground disturbance, site preparation or clearance.

25.     On or about January 16, 2025, Defendant contacted Plaintiff by telephone to advise Plaintiff that the CDA was ready to move forward and conduct an environmental review. During this communication Plaintiff mentioned its Phase 1 environmental report and was told the CDA is required to perform its own environmental review. During this communication Plaintiff mentioned that it was in the process of protecting and cleaning up the Property for public safety and to prevent physical deterioration because of vandalism and trespassers setting fires.

### *HUD Program Rules and Regulations*

26.     The applicable HUD Program rules and regulations are found at 24 CFR Part 58 and 24 CFR § 92 *et seq*.

27.     The HOME ARP Grant Agreement between Defendant and HUD regarding the Program specifically states that Defendant "agrees to assume all of the responsibility for environmental review, decision making, and actions, as specified and required in regulation at 24 CFR Part 58 and 24 CFR § 92 *et seq*. and, as well as the HOME-ARP Implementation Notice." A copy of the Grant Agreement is attached hereto as **Exhibit 3** and incorporated herein by reference.

28.     Under 24 CFR Part 58:

    a)     Defendant cannot release grant funds until a Request for Release of Funds ("RROF") or an Authority to Use Grant Funds ("AUGF") had been issued [§ 58.22];

    b)     before grant funds can be released Defendant must complete an environmental review of the Property [§ 92.352];

c)    until Defendant completes its environmental review and a RROF or AUGF is issued, Plaintiff cannot undertake an activity if the activity would have an adverse environmental impact or limit the choice of reasonable alternatives [§ 58.22(a)];

d)    if Plaintiff undertakes an activity that has an adverse environmental impact or limits the choice of reasonable alternatives Plaintiff commits a Choice Limiting Action ("CLA") violation;[5]

e)    if a CLA violation occurs after the federal nexus arises and before a RROF is submitted and HUD funds have not been expended or committed, a regulatory violation occurs [*HUD Choice Limiting Action (CLA) Violation Review Process Fact Shee*t **Exhibit 4**];

f)    if a regulatory violation occurs HUD mandates a CLA Regulatory Violation Review Process to determine whether grant eligibility terminates or Program participation proceeds [Exhibit 4] - the review process is described by HUD as follows:

      i.    Plaintiff must stop all work for the duration of the regulatory violation review process and Defendant must obtain documentation necessary to conduct the violation review;[6]

      ii.    after the review the Project may be recommended for approval if there is evidence of good cause (i.e., Plaintiff did not willfully non-comply and acted in error), a demonstration that the Project furthers HUD program goals, and the approval will not result in an unmitigated adverse environmental impact; and

---

[5] Pursuant to HUD regulations "[a] choice limiting action is any activity that a grantee undertakes, including committing or expending HUD or non I-IUD funds, that reduces or eliminates a grantee's opportunity to choose project alternatives that would avoid or minimize environmental impacts or enhance the quality of the human environment." 24 C.F.R. § 58.22 (2024).

[6] The documentation needed for the review process includes a timeline of events, <u>the submission of the environmental review</u>, documentation of the federal nexus, and documentation of the action identified as the CLA violation.

          iii.    depending on the outcome of the review process, a letter will be delivered to Plaintiff explaining the Project is approved or rejecting Project participation;

g)    temporary or permanent improvements that do not alter environmental conditions and are limited to protection, repair, or restoration activities necessary only to control or arrest the effects from disasters or imminent threats to public safety including those resulting from physical deterioration are exempt from being classified as a CLA [§ 58.34(10)].

***Defendant's Unilateral Termination of Plaintiff's Program Participation***

29.    On January 16, 2025, during the communication whenin the CDA contacted Plaintiff to schedule the environmental review, the CDA, by Karen Hutchins, verbally informed Plaintiff that Plaintiff had violated a CLA and that Plaintiff's Program participation was terminated.[7]

30.    In a letter from the CDA dated January 16, 2025, the CDA explained to Plaintiff that "engaging in Choice Limiting Actions, such as demolition and rehabilitation work, prior to the issuance of the AUGF is prohibited by federal regulation. Due to the engagement of such activities, CDA is cancelling the funding reservation for the development of [the Project]." A copy of the January 16, 2025 letter is attached hereto as **Exhibit 5** and incorporated herein by reference.

31.    At no time prior to or after Plaintiff's termination from the Program did Defendant conduct or attempt to conduct the environmental review required by HUD.

32.    At no time prior to or after Plaintiff's termination from the Program did Defendant mention, discuss, or initiate the regulatory review process or involve HUD in the termination decision.

---

[7] As of January 16, 2025, a federal nexus had been established, a RROF nor a AUGF had been created or issued, and HUD funds had not been expended or committed.

### *Defendant improperly Terminated Plaintiff's Program Participation*

33.     After being notified Program participation was terminated, Plaintiff asserted to the CDA that it did not commit a CLA violation or any violation of a CDA or HUD Program rule or regulation and that Plaintiff's activities concerning the Property were (i) limited to securing the Property and cleaning up debris to stop public safety threats and to prevent physical deterioration from trespassers and the burning of fires inside the Property using debris as fire kindle which did not have create an adverse impact on the environment; (ii) did not result in any limitation on the choice of reasonable alternatives; (iii) did not alter environmental conditions; and (iv) the activities were limited to protection activities necessary to control or stop imminent threats to public safety including those resulting from physical deterioration and fire.[8]

34.     On January 30, 2025, Plaintiff delivered a letter to the CDA and HUD to reiterate that the CDA's unilateral decision to terminate the award was improper, wrongful, and unlawful for the reasons described in paragraph 33, hereinabove. The letter also stated, among other things, that "demolition and rehabilitation or work" (as alleged by the CDA in its January 16, 2025 letter as the basis for a CLA violation) did not occur, that the CDA was in breach of 9/13/2024 Award Letter, the CDA had no authority to unilaterally terminate the award reservation, and the CDA was in violation of CDA and HUD Program rules and regulations. A copy of the January 30, 2025 letter (w/o attachments) is attached hereto as **Exhibit 6** and incorporated herein as if fully set out.

---

[8] Plaintiff told the CDA that it did not in any way alter the condition of the Property or commit any CLA violation or engage in any activity within the meaning of 24 C.F.R. § 58.22, including rehabilitation, demolition, new construction, or ground disturbance work at the Property. Plaintiff stated the work was "to secure the building stemmed from repeated break-ins, vandalism, and squatting, with squatters attempting to start fires inside the building, using ceiling tiles and various furniture items left behind … that the ceiling tiles are not fire rated and in the interest of public safety, should be removed along with the furniture items. The building is in close proximity to residential areas; thus, a building fire would pose a substantial fire risk to the neighboring residential community." Plaintiff also mentioned that HUD regulations provide a list of CLA exemptions that include "[a]ssistance for temporary or permanent improvements that do not alter environmental conditions and are limited to protection, repair, or restoration activities necessary only to control or arrest the effects from disasters or imminent threats to public safety including those resulting from physical deterioration" [24 C.F.R. § 58.34 (a)(10)] and that the activity of Plaintiff, if qualified as a CLA violation, which Plaintiff denies, such activity is an exception under HUD rules and regulations.

35.     Plaintiff requested several times that the CDA rescind its wrongful action associated with the unilaterally termination of the award and to act as promised and/or otherwise obligated under the 9/13/2024 Award Letter and under CDA and HUD Program rules and regulations.

36.     The acts and conduct of Defendant associated with the unilateral termination of Plaintiff's Program participation were improper, wrongful, and unlawful for numerous reasons, to wit:

i)      the CDA breached the 9/13/2024 Award Letter as no basis or ground existed that would allow the CDA to terminate the award reservation before 12/31/2025;

ii)     the CDA breached its agreement to administer the Program in compliance with CDA and HUD rules and regulations;

iii)    the CDA breached its obligations under City Ordinance 64688 by not acting in accordance with HUD rules and regulations;

iv)     the CDA breached its agreement to reserve Program funding contingent upon full compliance with all local, state and federal laws associated with the use of the funds as Plaintiff was in full compliance with all local, state and federal laws associated with the use of the funds;

v)      the CDA breached its agreement to reserve Program funds for Plaintiff absent a violation of CDA and/or HUD rules and regulations which did not occur;

vi)     the CDA is without authority to unilaterally terminate the award reservation and by doing so breached its agreement to administer the Program in compliance with HUD rules and regulations;

vii)    Plaintiff did not engage in any activity that qualified as a CLA violation;

viii)   Plaintiff's activities, if qualified as a CLA violation, which Plaintiff denies, fall within an allowed exception to a CLA violation;

ix)     the CDA ignored, failed to follow, and violated Defendant's ordinances and/or the CDA and HUD Program rules and regulations, including those associated with a CLA violation;

    x)     the CDA acted in excess of its power and authority under City Ordinances 56708 and/or 64688;

    xi)    the CDA acted in excess of its power and authority under HUD rules and regulations, including 24 C.F.R. §§ 58 *et seq.*;

    xii)   the CDA failed to provide Plaintiff an opportunity for review of the decision to terminate Program participation;

    xiii)  the CDA did not follow the regulatory review process;

    xiv)  Defendant denied Plaintiff's procedural due process rights;

    xv)   Defendant denied Plaintiff's substantive due process rights; and/or

    xvi)  for any of the reasons mentioned in subparts i) – xv), individually, jointly, and/or collectively, as to be proven at trial.

37.    Plaintiff have a legitimate claim of entitlement to Program participation and Defendant's noncompliance with HUD rules and regulations resulted in the deprivation of Plaintiff's interest without constitutionally adequate process and Defendant's noncompliance results in the deprivation of a protected interest without adequate notice or opportunity to be heard.

38.    The acts and conduct of the CDA are inequitable and unjust and have caused and will cause Plaintiff unnecessary delay, financial loss, and/or damage and Plaintiff can only be made whole by enforcing Defendant's ordinances, CDA and HUD Program rules and regulations, and paying Plaintiff $2,000,000.00 at such time as the Property would have qualified for HUD grant funding under the Program.

39.    The acts and conduct of Defendant were pretextual and were undertaken to violate Plaintiff's civil rights and in fact denied Plaintiff's Fourteenth Amendment right to procedural and substantive due process. The conduct of Defendant shocks the conscience and/or interferes with Plaintiff's rights implicit in the concept of ordered liberty.

## COUNT I – DENIAL OF SUBSTANTIVE DUE PROCESS

COMES NOW Plaintiff, by and through counsel, and for Count I of the Complaint for denial of Plaintiff's substantive due process rights states to the Court as follows:

40.    Plaintiff restates and incorporates herein by reference the averments in paragraphs 1 through 39.

41.    Substantive due process includes Plaintiff's right not to be subject to arbitrary or capricious acts by Defendant through administrative action or inaction.

42.    The private interest of Plaintiff associated with being a Program participant was affected by Defendant's official action in improperly and wrongfully terminating Plaintiff's Program participation in violation of HUD rules and regulations and City Ordinances.

43.    The procedures followed by Defendant in terminating Plaintiff's Program participation were an erroneous deprivation of Plaintiff's private interest and ignored procedural safeguards.

44.    Defendant's action in unilaterally terminating Plaintiff's Program participation without adequate notice or opportunity to be heard and violation of HUD rules and regulations and City Ordinances was ill conceived or malicious and shocks the conscience and/or was so arbitrary or irrational that it exceeded negligence and indifference reaching to a level of gross negligence depriving Plaintiff of constitutionally protected interests.

45.    As a direct and proximate result of the acts and conduct of Defendant as stated in this Complaint Plaintiff was damaged in an amount to be proven at trial, including for all attorney's fees and costs incurred in pursing this action.

WHEREFORE, based on the foregoing, Plaintiff prays for judgment against Defendant for such actual and consequential damages as are proven at trial in an amount in excess of $75,000.00, for all attorney's fees and costs, and for such other orders as the Court deems just and proper.

## COUNT II – DENIAL OF PROCEDURAL DUE PROCESS

COMES NOW Plaintiff, by and through counsel, and for Count II of the Complaint for denial of Plaintiff's procedural due process rights states to the Court as follows:

46.    Plaintiff restates and incorporates herein by reference the averments in paragraphs 1 through 45.

47.    At all times relevant herein, Plaintiff had a legitimate claim of entitlement associated with Program participation and with Defendant applying and following HUD rules and regulations and City Ordinances concerning the Program.

48.    Defendant failed to comply with procedural requirements set forth in HUD rules and regulations and City Ordinances concerning the Program. As a result of this noncompliance, Plaintiff was denied the opportunities associated with being a Program participate.

49.    The acts and conduct of Defendant as stated in this Complaint deprived Plaintiff of an interest encompassed within the Fourteenth Amendment's protection of life, liberty or property.

50.    The acts and conduct of Defendant as stated in this Complaint were constitutionally inadequate and fall short of the standards derived from the Due Process Clause.

51.    As a direct and proximate results of the acts and conduct of Defendant as stated in this Complaint Plaintiff was damaged in an amount to be proven at trial, including for all attorney's fees and costs incurred in pursing this action.

WHEREFORE, based on the foregoing, Plaintiff prays for judgment against Defendant for such actual and consequential damages as are proven at trial in an amount in excess of $75,000.00, for all attorney's fees and costs, and for such other orders as the Court deems just and proper.

**Plaintiff demands a jury trial on all Counts and factual issues, including damages.**

**SPOONER LAW, LLC**

By: /s/ *Jack B. Spooner*
    Jack B. Spooner   #38382
    34 North Brentwood Blvd., Suite 210
    St. Louis, Missouri 63105
    Phone: (314) 725-4300
    Facsimile: (314) 725-4301
    Email: jbs@spoonerlawllc.com
    ***Attorneys for Plaintiff***



Tishaura O. Jones
Mayor

Nahuel S. Fefer
Executive Director

September 13, 2024

Julia Lutovich
Freedom Living, LLC
12747 Olive Blvd, Ste 385
St. Louis, MO 63141

RE:    Freedom Living Senior and Veteran Apartments

Dear Freedom Living:

Thank you for your recent application to the City of St. Louis Community Development Administration (CDA) for housing development financing submitted in response to the 2024 Housing Production Notice of Funding Availability (NOFA). I am pleased to inform you that your project has been selected for the following funding recommendation:

| | |
|---|---|
| Project Name: | Freedom Living Senior and Veteran Apartments |
| Project Address: | 4411 N Newstead Ave |
| Total Funding Amount: | $2,000,000 |
| Funding Source: | HOME-ARP |

Please note: this recommendation is a reservation of funding contingent upon full compliance with all local, state and federal laws associated with the use of these funds. A written agreement and Deed of Trust will be executed only after all compliance provisions have been met.

This funding reservation will expire on December 31st, 2025 unless one of the following conditions is met:

1.    A written agreement between the Developer and the City must be executed and a deed of trust must be recorded with the Recorder of Deeds office before December 31st, 2025.

OR

2.    The Developer provides CDA with a written request for an extension which includes an explanation of why Condition 1 has not been met and the request is approved in writing by the Executive Director of CDA.

If neither of these conditions is satisfied, the funds reserved in this recommendation will be reallocated and the Developer is invited to reapply in a future NOFA round.

Your assigned housing analyst will be in touch shortly to schedule your project kickoff meeting to discuss

**EXHIBIT**

1

Freedom Living
September 13, 2024
Page 2

CDA and City approval processes, critical next steps and implementation timeline. Do not hesitate to reach out to myself, Bill Rataj, our Director of Housing, or Stephanie Christian, our Residential Development Manager with any additional needs.

Thank you again for your interest in residential development in the City of St. Louis. We look forward to working with you and participating in this effort.

Sincerely,

Nahuel S. Fefer
Executive Director

 Outlook

---

## Re: HOME-ARP Grant Award Reservation

From Hutchins, Karen <hutchinska@stlouis-mo.gov>
Date Thu 11/7/2024 10:22 AM
To    julia.lutovich lutovichlaw.com <julia.lutovich@lutovichlaw.com>

Hi Julia,

Thanks for inquiry about an update regarding the HOME-ARP Award **Reservation**. Funds for the HOME-ARP program have not yet been obligated to the award reservation recipients. We have a December 2026 deadline to obligate the funds. Since this is a new program, our legal team is creating contracts specific for this program. Unlike, ARPA funds that had to be obligated by December 31, 2024, this program is new and entirely different. The awarding process will take time and is not immediate. It is uncertain how long it will take before we issue a notice to proceed and receive draw requests from the awardees. Once we receive a contract agreement from the legal team for this program, our next step will be to get approval from the E & A Board. The next Board meeting will be in December, so we know you will not be able to receive funding before 2025 at the earliest. Keep in mind these funds will not be issued as a one-time payment. They will reimburse you for funds spent. So keep your receipts and invoices of all expenditures. When you receive your Notice to Proceed, then you will be able to submit your expenditures for payment. I will be in touch with you as I will need to schedule closings, signings, and ask for additional documentation not submitted during the application process.

I hope this information is helpful. If you have any questions, please do not hesitate to contact me.

**Karen Hutchins,**

Program Manager II, HOME -ARP

Community Development Administration (CDA)

1520 Market Street, Suite 2000

St. Louis, MO 63103

(314) 657-3716 (Office)

(314) 613-7013 (Fax)

hutchinska@stlouis-mo.gov

**EXHIBIT**

2

# HOME ARP Grant Agreement
Title II of the Cranston-Gonzalez National Affordable Housing Act

**U.S. Department of Housing and Urban Development**
Office of Community Planning and Development

Assistance Listings #14.239 – HOME Investment Partnerships Program

| | |
|---|---|
| 1. Grantee Name and Address<br>St Louis<br>1015 Locust Street, Suite 1140<br>Community Development Administratio<br>St. Louis, MO 63101-0000 | 2. Grant Number (Federal Award Identification Number (FAIN)<br>M21-MP290500 |

| 3a. Tax Identification Number<br>436003231 | 3b. Unique Entity Identifier (formerly DUNS)<br>138251082 |
|---|---|
| 4. Appropriation Number<br>861/50205 | 5. Budget Period Start and End Date<br>FY 2021 – 09/30/2030 |

| 6. Previous Obligation (Enter "0" for initial FY allocation) | | $0 |
|---|---|---|
| a. Formula Funds | $ | |

| 7. Current Transaction (+ or -) | | |
|---|---|---|
| a. Administrative and Planning Funds Available on Federal Award Date | $531,776.15 | $10,635,523.00 |
| b. Balance of Administrative and Planning Funds | $1,063,552.30 | |
| c. Balance of Formula Funds | $9,040,194.55 | |

| 8. Revised Obligation | | $ |
|---|---|---|
| a. Formula Funds | $ | |

| 9. Special Conditions (check applicable box)<br>☐ Not applicable    ☐ Attached | 10. Federal Award Date (HUD Official's Signature Date)<br>09/20/2021 |
|---|---|

11. Indirect Cost Rate*

| Administering Agency/Dept. | Indirect Cost Rate | Direct Cost Base |
|---|---|---|
| CDA | 0 % | MTDC |
| — | ___ % | |
| — | ___% | |
| — | ___% | |

12. Period of Performance
Date in Box #10 - 09/30/2030

\* If funding assistance will be used for payment of indirect costs pursuant to 2 CFR 200, Subpart E-Cost Principles, provide the name of the department/agency, its indirect cost rate (including if the de minimis rate is charged per 2 § CFR 200.414), and the direct cost base to which the rate will be applied. Do not include cost rates for subrecipients.

The HOME-ARP Grant Agreement (the "Agreement") between the Department of Housing and Urban Development (HUD) and the Grantee is made pursuant to the authority of the HOME Investment Partnerships Act (42 U.S.C. 12701 et seq.) and Section 3205 of the American Rescue Plan (P.L. 117-2) (ARP). HUD regulations at 24 CFR part 92 (as may be amended from time to time), the CPD Notice entitled "Requirements for the Use of Funds in the HOME-American Rescue Plan Program" (HOME-ARP Implementation Notice), the Grantee's HOME-ARP allocation plan (as of the date of HUD's approval), and this HOME-ARP Grant Agreement, form HUD-40093a, including any special conditions (in accordance with 2 CFR 200.208), constitute part of this Agreement. HUD's payment of funds under this Agreement is subject to the Grantee's compliance with HUD's electronic funds transfer and information reporting procedures issued pursuant to 24 CFR 92.502 and the HOME-ARP Implementation Notice. To the extent authorized by HUD regulations at 24 CFR part 92, HUD may, by its execution of an amendment, deobligate funds previously awarded to the Grantee without the Grantee's execution of the amendment or other consent. The Grantee agrees that funds invested in HOME-ARP activities under the HOME-ARP Implementation Notice are repayable in accordance with the requirements of the HOME-ARP Implementation Notice. The Grantee agrees to assume all of the responsibility for environmental review, decision making, and actions, as specified and required in regulation at 24 CFR 92.352 and 24 CFR Part 58, as well as the HOME-ARP Implementation Notice.
The Grantee must comply with the applicable requirements at 2 CFR part 200, as amended, that are incorporated by the program regulations and the HOME-ARP Implementation Notice, as may be amended from time to time. Where any previous or future amendments to 2 CFR part 200 replace or renumber sections of part 200 that are cited specifically in the program regulations or HOME-ARP Implementation Notice, activities carried out under the grant after the effective date of the 2 CFR part 200 amendments will be governed by the 2 CFR part 200 requirements, as replaced or renumbered by the part 200 amendments.
The Grantee shall comply with requirements established by the Office of Management and Budget (OMB) concerning the Universal Numbering System and System for Award Management (SAM) requirements in Appendix I to 2 CFR part 200, and the Federal Funding Accountability and Transparency Act (FFATA) in Appendix A to 2 CFR part 170.
Funds remaining in the grantee's Treasury account after the end of the budget period will be cancelled and thereafter not available for obligation or expenditure for any purpose. Per 31 U.S.C. 1552, the Grantee shall not incur any obligations to be paid with such assistance after the end of the Budget Period.

| 13. For the U.S. Department of HUD (Name and Title of Authorized Official)<br>Renee Ryles, Acting CPD Director | 14. Signature *Renee D Ryles* | 15. Date<br>09/22/2021 |
|---|---|---|
| 16. For the Grantee (Name and Title of Authorized Official)<br>Honarble Tishaura O. Jones | 17. Signature<br>x *Tishaura O. Jones* | 18. Date<br>10 27 2021 |

| 19. Check one:  ☒ Initial Agreement     ☐ Amendment # |
|---|

20. Funding Information:     *HOME ARP*

| Source of Funds<br>2021 | Appropriation Code<br>861/50205 | PAS Code<br>HMX | Amount<br>$10,635,523.00 |
|---|---|---|---|

**EXHIBIT**

3

tabbies

form HUD-40093a

Updated 8/30/24

# HUD Choice Limiting Action (CLA) Violation Review Process Fact Sheet

**What is a Choice Limiting Action (CLA) Violation under 24 CFR 58.22(a)?**

- A CLA violation is an activity undertaken by the grantee or their partners after the federal nexus but prior to obtaining environmental clearance, that reduces or eliminates a grantee's opportunity to choose project alternatives that would avoid or minimize environmental impacts or enhance the quality of the human environment.

- CLAs may include but are not limited to: real property acquisition; demolition; disposition; rehabilitation; repair; new construction; site preparation or clearance; ground disturbance; and leasing, including a binding legal contract to commit these activities that is not conditioned on successful completion of the environmental review (ER) process.

**CLA Preliminary Determination**

- HUD's Regional Environmental Officer coordinates with the HUD Program Office providing the project funding to obtain information and documentation from the grantee's local government Responsible Entity (RE) needed to make a preliminary determination as to whether a CLA violation has occurred and whether it was statutory or regulatory in nature. Requested documentation may include a clear timeline of events and copies of contracts or commitments.

**Determining Nature of a CLA Violation Flow Chart**



EXHIBIT

4

**Statutory Violation**

- A statutory violation occurs when there is a commitment of HUD program funds after the federal nexus is established and prior to submission of the Request for Release of Funds and Certification (RROF/C) to HUD.

- In general, HUD cannot approve a project that committed a statutory violation, and recipients and their partners are precluded from using any HUD funds subject to the statute that was violated for the same project. The Native American Housing Assistance and Self Determination Act of 1996 (NAHASDA) is currently the only statute that provides that the Secretary may waive statutory ER requirements. For more information see Section 105(d) of NAHASDA.

**Regulatory Violation**

- A regulatory violation occurs after the federal nexus is established and one of the following takes place:

  o HUD funds are committed or spent on a choice limiting activity after the RROF/C is submitted but prior to HUD (or state) approval of the RROF/C.

  o Non-HUD funds are committed/spent on a CLA prior to submission or approval of the RROF/C.

  o The recipient committed a statutory violation and is now applying for program funds subject to a different statute's ER requirements.

**CLA Regulatory Violation Review Process**

- HUD's Regional Environmental Officer coordinates with the HUD Program Office to inform the local government Responsible Entity of the preliminary violation determination, request that the RE and project partners stop all work for the duration of the regulatory violation review process and obtain documentation necessary to conduct the violation review.

- The documentation needed for the review includes a timeline of events, the RE's submission of the project ER (in HEROS), documentation of the federal nexus, and documentation of the action identified as a CLA.

- After HUD reviews the content of the ER, the project may be recommended for approval if there is evidence of good cause (i.e., the RE did not willfully non-comply and acted in error); demonstration that the project furthers HUD program goals, and the approval will not result in unmitigated adverse environmental impacts.

- Depending on the outcome of the review, the HUD Program Office will provide an approval or rejection letter to the RE, including any necessary corrective actions and whether the RE will need to issue (or re-issue) a public notice.



**COMMUNITY DEVELOPMENT ADMINISTRATION**
CITY OF ST. LOUIS

Tishaura O. Jones
Mayor

Nahuel S. Fefer
Executive Director

January 16, 2024

Kamaran Khan, Makeva Walker
Freedom Living, LLC
Olive Blvd, Ste 385
St. Louis, Missouri MO

Re:  2024 NOFA Funding Reservation – Freedom Living Senior and Veteran Apartments

Dear Kamaran Khan and Makeva Walker

Freedom Living, LLC was awarded a funding reservation for $2,000,000 in HOME-ARP funding toward the rehabilitation of 175 residential units in the 2024 CDA Housing NOFA. A CDA-conducted environmental review is required for all projects to submit a Request for Release of Funds (RROF) from HUD. Upon approval of the RROF, HUD will issue an Authorization to Use Grant Funds (AUGF). Engaging in Choice Limiting Actions, such as demolition and rehabilitation work, prior to the issuance of the AUGF is prohibited by federal regulation. Due to the engagement of such activities, CDA is cancelling the funding reservation for the development of Freedom Living Senior and Veteran Apartments. We invite you to reapply in an upcoming funding cycle, bearing in mind that all activity on the property must halt at the time that the new application is submitted and must remain paused until such time that the CDA environmental review is completed.

If you have any questions, please contact Karen Hutchins,  Housing Analyst at hutchinska@stlouis-mo.gov or (314) 657-3716.

Sincerely,

Nahuel Fefer
Executive Director

**EXHIBIT**

tabbies

5

# SPOONER LAW, LLC

### TRIAL ATTORNEYS

34 NORTH BRENTWOOD BLVD.
SUITE 210
ST. LOUIS, MISSOURI 63105
www.spoonerlawllc.com

Jack B. Spooner
Licensed in MO, IL, TX

**VIA HAND DELIVERY**

TELEPHONE (314) 725-4300
FACSIMILE (314) 725-4301
EMAIL jbs@spoonerlawllc.com

January 30, 2025

HUD – Region 7 STL Field Office
ATTN: Dominique Waters, Director
1222 Spruce Street, Suite 3203
St. Louis, Missouri 63103

**RE:**    <u>4405-4411 North Newstead Ave., St. Louis, Missouri ("Property")</u>

Dear Director Walker,

Spooner Law, LLC has been retained by Freedom Living, LLC ("RE") concerning the City of St. Louis Community Development Administration's (local government Responsible Entity, hereinafter "CDA") improper attempt to unilaterally terminate RE's participation in the HOME Investment Partnerships American Rescue Plan Program ("Program") based on purported nonexistent and unsupported Choice Limiting Action ("CLA") violations.

As this correspondence explains, the CDA's actions are unfounded and a misapplication of HUD rules and regulations associated with the Program. RE's activities concerning the Property do not qualify as a CLA violation. Further, the CDA did not provide a review, did not consider exemptions, ignored the regulatory violation review process, did not let the HUD Program Office participate in a review, and did not allow RE to explain its activities or provide evidence of good cause, unintentional noncompliance and error.

Specifically, on September 13, 2024, the CDA advised RE that the Freedom Living Senior and Veteran Apartments project ("Project") was selected for a funding recommendation regarding the Program. **Attachment 1 - 9/13/2024 CDA Award Reservation Letter**.

In November 2024, RE moved forward with the environmental review ("ER") inspection. During this time RE learned the trespassers squatting in the Property were using debris inside the Property for indoor campfires.[1]

After being advised by Midwest Testing that there are no environmental concerns, RE tried to better control the Property due to public safety threats and to prevent physical deterioration caused by trespassers building fires inside the Property. RE undertook additional activities to secure the Property and to clean up debris that could be used in a fire. The activities of RE were in the nature of maintenance, debris clean up and security and did not alter or effect environmental conditions. RE's activities included no demolition, rehabilitation, repair, new construction, ground disturbance, site preparation or clearance.

---

[1] RE asked the CDA if funds could be used to secure the Property. The CDA notified RE by email dated 11/7/2024 that expenditures for payment cannot be submitted until a Notice to Proceed is issued. **Attachment 2 – 11** CDA Email. A Notice to Proceed was never issued nor was a RROF or AUGF ever created.

**EXHIBIT**

6

tabbies

January 30, 2025
Page Two

On January 16, 2025, RE communicated to the CDA that the Property was being secured and debris removed. During this communication the CDA *verbally* advised RE that "<u>any activity</u>" on the Property was a Choice Limiting Action ("CLA") violation that terminated Program participation. RE vehemently disagreed with the CDA's assessment and explained that securing the Property and cleaning up debris to stop public safety threats and prevent physical deterioration from trespassers lighting fires inside the Property using debris as fire kindle was not a CLA violation, had no adverse impact on the environment, did not result in any limitation on the choice of reasonable alternatives, did not alter environmental conditions, and that the activities were limited to protection activities necessary to control or stop imminent threats to public safety including those resulting from physical deterioration. RE asked the CDA to meet at the Property to inspect RE's activities. The CDA refused to meet at the Property, and never inspected or viewed the Property to substantiate the existence of the alleged CLA violation.

After the verbal discussion with RE about the CLA violation, the CDA delivered a letter to RE notifying RE that the CDA determined RE engaged in a CLA violation by "demolition and rehabilitation work, prior to the issuance of the AUGF" that automatically terminated RE's participation in the Program. **Attachment 3 – CDA 1/16/2025 Notice of CLA Letter.** The unilateral termination of RE from the Program reflects a misunderstanding of the Program, its associated rules and regulations, and relies on nonexistent and inaccurate facts, to wit:

i)      the letter accuses RE of engaging in "demolition and rehabilitation work" yet the basis for and nature of the "demolition and rehabilitation work" is unknown, as is what supports the finding that "demolition and rehabilitation work" was performed, which RE fervently denies;

ii)      the letter states that an ER is required before a RROF can be submitted and that upon approval of the RROF HUD will issue an AUGF, however, no RROF was created and there was not a final HUD commitment of Program funds;

iii)      the letter indicates that engaging in a CLA before issuance of the AUGF results in Program termination, however, a CLA that occurs before the RROF is submitted and before HUD funds are committed is subject to a review process which was not provided;

iv)      the HUD Regional Environmental Officer coordinates with the HUD Program Officer and the CDA about a CLA violation and conducts a review process and then the HUD Program Office notifies the RE about the outcome which must occur before Program termination;

v)      no consideration was given to RE's purported activities being exempt activities under 24 C.F.R. § 58.34(a)(10);

vi)      the CDA is without unilateral authority to terminate program participation under the facts and circumstances alleged in the letter; and

vii)      RE reserves the right to raise additional issues as its investigation continues.

January 30, 2025
Page Three

RE responded to the CDA's wrongful unilateral Program termination by briefly addressing the purported CLA violation reiterating that RE's activities were not a CLA violation and were activities limited to efforts to secure the Property as necessary to control and prevent imminent threats to public safety including those resulting from physical deterioration undertaken only to protect the Property from vandalism and fire. **Attachment 4 – 1/20/2025 RE Letter**. RE explained it did not commit a CLA violation, however, if a CLA violation occurred, which RE denies, RE's activities were exempt under 24 C.F.R. § 58.34(a)(10), were not willful non-compliance and committed in error with good cause for a Project that furthers Program goals and that does not result in any unmitigated adverse environmental impacts.[2]

HUD review will confirm that the CDA ignored HUD rules and regulations and is not authorized to terminate Program participation based on the circumstances alleged, that RE has established good cause to recommend approval of the Project and to have HUD provide an approval letter. During the regulatory review process RE does not intend to, and will not, perform any work on the Property.

A regulatory review will establish that the CDA decision to unilaterally terminate RE's Program participation was improper and must be rescinded. A federal nexus exists between RE and HUD as RE was awarded a 2024 NOFA Funding Reservation in HOME-ARP. See Attachment 1. The timeline of events is straightforward:

| | |
|---|---|
| 9/13/2024 | CDA Award Reservation Letter Issued. |
| 12/5/2024 | RE advised by ER of no environmental concerns.[3] |
| 1/13/2025 | RE cleans up the Property and removes debris. |
| 1/16/2025 | CDA notice letter of CLA violation and Program termination. |

Other than the description of the activities the CDA alleges in the 1/16/2025 notice letter as a CLA violation, RE is not aware of any documentation of the action identified as a CLA violation. However, once HUD identifies the contact person for this matter RE will provide photographs taken before the date of the award letter, at the time of the ER, and this week, that evidence no CLA violation occurred, no activity was performed that reduces or eliminates RE's opportunity to choose project alternatives that would avoid or minimize environmental impacts or enhance the quality of the human environment, no improvements were made altering environmental conditions, that the activities were limited to protect the Property and necessary to control or arrest the effects of imminent threats to public safety including those resulting from physical deterioration associated with trespassers and indoor campfires, and/or that establish good cause that RE did not willfully non-comply and acted in error and that demonstrates the Project furthers HUD program goals and approval will not result in unmitigated adverse environmental impacts.

Thank you for your immediate attention to this matter. As time is of the essence please reply by February 3, 2025.

Regards,

Jack B. Spooner

Attachments 1-5
cc: Julia Lutovich

---

[2] CDA did not responded to RE. The RE is forwarding a copy of this correspondence and attachments to the CDA.
[3] RE is providing the ER report without attachments. **Attachment 5**. The complete ER will be provided in HEROS.